# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**JUAN BRAVO AND VIVIANA ORTIZ**,
    Plaintiffs,

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE,**
    Defendant.

Civil No. 18-1548 (BJM)

## ORDER

    This diversity case was brought by plaintiffs Juan Bravo and Viviana Ortiz (collectively "Bravo") on August 6, 2018, seeking monetary relief against defendant Federal National Mortgage Association ("Fannie Mae") for damage to their apartment suffered in the aftermath of Hurricane Maria and that continues to the present day. *See* Dkts. 1 (hereinafter "Bravo Compl."), 86-1. Before the court is Fannie Mae's motion to set aside entry of default, Dkt. 80, which Bravo opposed, Dkt. 86. This case is before me by consent of the parties. Dkt. 12. For the following reasons, Fannie Mae's motion is **DENIED**.

## BACKGROUND

    Bravo alleges that their apartment and its contents suffered damage in the aftermath of Hurricane Maria due to Fannie Mae's negligent maintenance of the apartment located directly above their own. Bravo Compl. 4:34–35. They further allege that said damage is ongoing, as water continues to flood their apartment. *See* Dkts. 54 at 2, 86-1. Fannie Mae denied liability for any damage to Bravo's apartment and raised a series of affirmative defenses. Dkt. 8.

    Parties proposed a discovery schedule in November 2018. Dkt. 10. During discovery, Bravo requested information from Fannie Mae, and Fannie Mae, represented by Enrique A. Guzman-Matos, repeatedly failed to comply with discovery requests and court orders. *See* Dkt. 50 (summarizing discovery disputes). Although Fannie Mae agreed it would identify and produce a deponent, it failed to do so despite Bravo's repeated requests. *See id.* Bravo filed various motions to compel, all of which went unopposed, and I ordered Fannie Mae to identify and produce a

deponent by a set deadline. *See* Dkt. 26. I also warned Fannie Mae that failure to comply could result in sanctions, including entry of default and imposition of costs and fees. *See id.*

Fannie Mae missed that deadline and otherwise continued to fail to participate in discovery. *See* Dkt. 50. After Bravo filed additional motions to compel and motions for entry of default, I ordered sanctions against Fannie Mae, finding that its repeated failure to obey court orders, meet deadlines, and lack of participation in discovery indicated a pattern of stonewalling. *See id.* Rather than order default, I ordered Fannie Mae to pay Bravo's reasonable attorneys' fees and costs incurred because of Fannie Mae's failure to participate in discovery. *See id.* I also ordered Fannie Mae to fulfill outstanding discovery requests and again warned that failure to comply could result in further sanctions, including entry of default and imposition of additional attorneys' fees. *See id.*

Fannie Mae again failed to comply with outstanding requests, and Bravo filed another two motions for entry of default, Dkts. 54, 56, both of which went unopposed. Finding that Fannie Mae's repeated failures to comply with court-ordered discovery deadlines merited sanctions, I entered default. Dkt. 57.

Later, Fannie Mae's counsel failed to appear at a hearing, reporting that he did not know it was set because he was in a medical appointment. Dkt. 71. A secretary at his firm, however, had previously confirmed with the court that she had delivered the message regarding the hearing to counsel. *Id.*

A default judgment hearing was scheduled for January 21, 2020, but neither party appeared in court. Dkt. 72. It was then reset for March 5. Dkt. 76.

Fannie Mae discharged Attorney Guzman, hired new counsel, and filed an emergency motion to set aside default, arguing it had no knowledge it was in default. Dkt. 80. Bravo opposed. Dkt. 86.

## DISCUSSION

Rule 55(c) provides that a court may set aside an entry of default for "good cause." Fed.R.Civ.P. 55(c). Courts consider numerous factors in assessing good cause rather than applying a mechanical formula. *See KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003).

Typically, courts consider (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented. *Indigo Am., Inc. v. Big Impressions*, LLC, 597 F.3d 1, 3 (1st Cir. 2010) (citation omitted). But these factors are not exclusive, and courts may consider other relevant factors, including "'(4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; (7) the timing of the motion [to set aside the entry of default].'" *Id.* (citing *KPS & Assocs.*, 318 F.3d at 12 and quoting *McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 503 (1st Cir.1996)). The party seeking to set aside the default carries the burden of demonstrating good cause. *Id.*

Some factors favor Fannie Mae. For instance, it is undisputed that plaintiffs seek a substantial sum in damages—$935,000 plus attorneys' fees and costs. And Fannie Mae has a potentially meritorious defense, arguing that it is not liable for damages to the Bravos' home because it was not the owner of the property when Hurricane Maria hit and that any subsequent damages are due to HOA-owned pipes, not because of Fannie Mae's acts or omissions. *See Indigo Am. Inc.*, 597 F.3d at 4 ("Establishing the existence of a meritorious defense is not a particularly arduous task. A party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense.") (internal quotation marks and citation omitted).

However, the willful nature of the default here weighs heavily against Fannie Mae. Fannie Mae, acting through counsel, repeatedly flouted court orders and failed to participate in discovery. Several times I cautioned Fannie Mae that its conduct merited sanctions, which could include default. And I attempted lesser sanctions to no avail.

Fannie Mae attempts to distance itself from the conduct of its chosen counsel, averring that it had no idea what was happening with the instant litigation and that it was completely willing to participate in discovery and comply with court orders. As plaintiffs point out, however, counsel for Fannie Mae was Fannie Mae's agent. Asking the court to divorce counsel's acts from the party he represents runs contrary to a long line of precedent. *See, e.g., Pioneer Inv. Servs. Co. v.*

*Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993) ("[R]espondents [must] be held accountable for the acts and omissions of their chosen counsel."); *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *Top Entm't Inc. v. Ortega*, 285 F.3d 115, 119 (1st Cir. 2002) ("[W]e reject the argument that appellants should not be punished for the misdeeds of their counsel."); *Farm Const. Servs., Inc. v. Fudge*, 831 F.2d 18, 21 (1st Cir. 1987) ("This Circuit, following *Link*, has turned a deaf ear to the plea that 'the sins of the attorney should not be visited upon the client.") (citing cases) (internal quotation marks omitted). Fannie Mae's counsel missed a series of deadlines, flouted court orders, and may have made a misrepresentation to the court. Such conduct is egregious. Although Fannie Mae argues that holding it to account for counsel's conduct is unfair, this is the result that the law of agency requires.[1]

      Additionally, although Fannie Mae contends that it was ready and willing to participate in the litigation and altogether ignorant of the sanctions ordered against it, these arguments are unavailing. First, I note that Fannie Mae has its own legal department, which could have accessed PACER. Where litigation involves approximately one million dollars in damages, I would expect Fannie Mae's legal department to, on its own volition, attempt to stay abreast of the litigation by its own means. Further, although Fannie Mae represents that it has been participating in settlement negotiations, its representations are vague and unsupported. Meanwhile, counsel for Bravo indicates that, aside from one settlement offer Bravo sent to Fannie Mae, which went unanswered, no such discussions have occurred. And although Fannie Mae represents that it has proactively attempted to address the water that is seeping into Bravo's home, including by coordinating inspections of the premises with the Bravos and holding a meeting with the Bravos on February 3,

---

[1] Moreover, Fannie Mae is not without recourse, as it can pursue a malpractice action. *See Link*, 370 U.S. at 634 n.10.

2020, *see* Dkt. 80-1, Mr. Bravo denies that any of this took place, *see* Dkt. 86-1. In support of its claim, Fannie Mae submitted a declaration from Christopher Barker. See Dkt. 80-1. Barker, however, only supervises those who manage Fannie Mae real estate and lacks any personal knowledge of the alleged inspections or meeting. In contrast, Mr. Bravo has direct personal knowledge regarding the allegations. Bearing in mind that Fannie Mae holds the burden to show cause to set aside default, I find that Fannie Mae failed to meet that burden.

And although Fannie Mae points to *Companion Health Servs., Inc. v. Kurtz*, 675 F.3d 75, (1st Cir. 2012) to suggest that default was inappropriate here, that case is inapposite. In that case, a district court had imposed default as a sanction after unrepresented parties missed a single deadline. *Id.* at 85. The First Circuit explained that under such circumstances, default was an inappropriate sanction. *Id.* In contrast, here Fannie Mae was represented, and counsel for Fannie Mae repeatedly missed deadlines and failed to comply with court orders.

Finally, if the default were set aside, the Bravos would suffer harm. Normally, delay alone is not considered harm to the non-defaulting party for purposes of determining whether a default should be set aside. *KPS & Assocs.*, 318 F.3d at 15; *see also FDIC v. Francisco Inv. Corp.*, 873 F.2d 474, 479 (1st Cir. 1989) (explaining that "[t]he issue is not mere delay, but rather its accompanying dangers: loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or collusion."). Here, however, delay is a real harm to the Bravo family. Water continues to seep into their home, causing ongoing damage to their property. *See* Dkt. 86-1. Any delay in proceedings thus exacerbates the damage this suit attempts to remedy.

Given the willful nature of Fannie Mae's default and in light of the unique harm to Bravo that will be suffered if proceedings are delayed, I find that Fannie Mae has failed to demonstrate good cause for setting aside default. For these reasons, Fannie Mae's motion is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of March, 2020.

                                       *S/ Bruce J. McGiverin*
                                       BRUCE J. MCGIVERIN
                                       United States Magistrate Judge